**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. _____**

AIRBNB, INC.,

      Plaintiff (s)

vs.

COUNTY OF PALM BEACH,

      Defendant(s).

_____/

## COMPLAINT

Plaintiff Airbnb, Inc. ("Airbnb") brings this action to enjoin and declare unlawful the enforcement against Airbnb by the County of Palm Beach ("Palm Beach" or the "County") of Ordinance No. 2018-024 (the "Ordinance"), set forth in Chapter 17 of the Palm Beach County Code. This action is brought under 42 U.S.C. § 1983, 47 U.S.C. § 230, 18 U.S.C. § 2707, the Court's equitable powers, and the Declaratory Judgment Act, 28 U.S.C. § 2201. This action is both an as-applied and a facial challenge to the Ordinance. It is an as-applied challenge in that it seeks only to prohibit the County from enforcing certain provisions of the Ordinance against Airbnb; and it is a facial challenge in that certain provisions, on their face, violate the law and cannot be enforced against any "Booking Service" or "Hosting Platform" in any set of factual circumstances. Airbnb does not currently seek a temporary restraining order or preliminary injunction because the County has informed Airbnb by email that it does not intend to enforce

the Ordinance immediately.  Airbnb reserves all rights to seek such relief should the County move forward with enforcing the Ordinance.

1.       Airbnb has attempted for years to work with Palm Beach County to achieve a framework for reasonable regulation.  Unswayed, the County has overreached and now finds itself on the wrong side of the law.  The County seeks to contort the meaning of federal and state law in an attempt to conscript Airbnb into enforcing illegal regulations on the County's behalf.

2.       Palm Beach has enacted an Ordinance punishing home-sharing platforms, like Airbnb, that publish third-party listings advertising short-term rentals, and compelling those platforms to disclose confidential, non-public information about their users without any legal process or precompliance review.  But state and federal law protect Airbnb and other home-sharing platforms from precisely the kinds of measures the County seeks to impose.  Airbnb believes that home-sharing may be lawfully regulated, and it has worked with dozens of cities to develop the tools they need to do so without violating federal or state law.  But Palm Beach cannot distort or evade the meaning of Communications Decency Act (47 U.S.C. § 230), the Stored Communications Act (18 U.S.C. §§ 2701 *et seq.*), the Florida Security of Communications Act, Fla Stat. Ann. § 934.23(4)(a), or First, Fourth, and Fourteenth Amendments of the U.S. Constitution, and Sections 4, 12, and 23 of Article I of the Florida Constitution.  As the Ordinance is inconsistent with both federal and Florida law, it cannot stand.

**The County Ignored Federal and State Laws and the U.S. and Florida Constitutions**

3.       Palm Beach's Ordinance compels Airbnb to "[a]ctively prevent, remove and cancel any illegal listings and bookings" of short-term rentals on its website.  The Ordinance

also forces home-sharing platforms like Airbnb to police third-party content on their websites by penalizing the design and operation of their platforms and restricting and imposing severe financial burdens on protected commercial speech. And it requires Airbnb to disclose to the County confidential user information entitled to privacy protections without any legal process or precompliance review. This regime straightforwardly violates the Communications Decency Act, the Stored Communications Act, the Florida Security of Communications Act, and the U.S. and Florida Constitutions.

       4.      Through Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, Congress sought to protect and nurture the Internet as a forum for communication, expression, and e-commerce. The CDA prohibits "treat[ing]" websites that host or distribute third-party content, like Airbnb, "as the publisher or speaker of any information provided by another information content provider," immunizing them from liability under any "inconsistent" state or local law. 47 U.S.C. § 230(c)(1), (e)(3). In enacting the CDA, Congress expressly stated that "the policy of the United States . . . to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." *Id.* § 230(b)(2). Accordingly, "[t]he majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). Courts' "preference for broad construction recognizes that websites that display third-party content may have an infinite number of users generating an enormous amount of potentially harmful content, and holding website operators

liable for that content 'would have an obvious chilling effect' in light of the difficulty of screening posts for potential issues."  *Jane Doe No.1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016) (quoting *Zeran*, 129 F.3d at 331).  Embodied in Section 230 is Congress's desire "to keep government interference in the [Internet] medium to a minimum."  *Zeran*, 129 F.3d at 330; *see Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003) ("Congress wanted to encourage the unfettered and unregulated development of free speech on the Internet, and to promote the development of e-commerce.").

5. Airbnb is a realization of Congress's goals.  It is a classic intermediary: Airbnb operates an online platform that allows hosts and guests to find each other and arrange their own transactions for overnight accommodation.  Hosts control the relevant content of their listings and publish them; hosts and guests alone, not Airbnb, decide whether and on what terms to enter into transactions.  This brings Airbnb squarely within the protections of the CDA.

6. The Ordinance is inconsistent with the CDA because it (i) requires Airbnb to "actively prevent, remove, and cancel" certain third-party rental advertisements and (ii) requires Airbnb to monitor, review, and verify that third-party content by penalizing booking transactions for certain third-party rental advertisements.  By imposing these obligations and duties on Airbnb, and costly liability for failure to comply, the Ordinance impermissibly treats Airbnb as the publisher or speaker of third-party content.  The CDA therefore preempts the Ordinance.

7. The Ordinance also violates the First and Fourteenth Amendments of the U.S. Constitution and Article 1, Section 4 of the Florida Constitution because it is an impermissible content-based regulation of speech.

8.      The Ordinance also violates the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.* (the "SCA"), the Fourth Amendment of the U.S. Constitution, the Florida Security of Communications Act, Fla. Stat. Ann. § 934.23(4)(a), and Article 1, Section 12 of the Florida Constitution by requiring Airbnb to turn over personal, non-public information about its hosts.  The County cannot obtain this data without legal process and precompliance review.  In attempting to do so, the Ordinance breaches critical privacy protections.

9.      Finally, the Ordinance violates Article I, Section 23 of the Florida constitution by requiring Airbnb to disclose to the County information in which its users have a reasonable expectation of privacy.

## PARTIES

10.     Plaintiff Airbnb, Inc., is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in San Francisco, California. It maintains a website that provides an online marketplace for people to list, explore, and book both short-term and long-term housing accommodations.

11.     Defendant Palm Beach County is a county located in Florida.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Airbnb alleges an imminent violation of its rights under the Constitution and laws of the United States.

13.     The Court may declare the legal rights and obligations of the parties in this action under 28 U.S.C. § 2201 because the action presents an actual controversy within the Court's jurisdiction.

14.     Venue is proper under 28 U.S.C. § 1391 because the Defendant is located and resides in this judicial district, and because a substantial part of the events giving rise to Airbnb's claims for relief occurred in this judicial district.

## FACTUAL ALLEGATIONS[1]

### Airbnb Is a Leading Internet Platform for Responsible Home-Sharing

15.     Founded in 2008, Airbnb provides an Internet platform through which persons desiring to book accommodations ("guests"), and persons listing unique accommodations available for rental ("hosts"), can locate each other and contract directly to reserve and book travel accommodations on a short- or long-term basis.

16.     Airbnb's website, at www.airbnb.com, allows interested parties to advertise their accommodations, enables hosts and guests to locate and connect with each other, and provides a platform for hosts and guests to communicate and message one another directly to determine the material terms for their bookings.  Airbnb also provides electronic storage on its platform for communications between users.  Airbnb designed its platform to allow users to book rental transactions on the same website (or app) where they view rental listings.  To do so, it provides payment processing services that permit hosts to receive payments electronically.

17.     Airbnb does not charge hosts any upfront fees when they post their listings.  Instead, in consideration for use of the platform services, including its publication and booking services, Airbnb receives a service fee from both the guest and the host, which is

---

[1] These facts concern properties on the Airbnb website (www.Airbnb.com) in the United States, and do not extend to Luxury Retreats (www.luxuryretreats.com), which is a subsidiary of Airbnb, Inc.

determined as a percentage of the accommodation fee set solely by the host.  Airbnb is compensated for and able to provide its services, including its publishing, listing, and booking services, through such service fees, which help cover the costs associated with running Airbnb's website and services.

18.     Airbnb has no possessory interest in the property or accommodations that third-party hosts may list on the Internet platform.  Airbnb therefore is not a proprietor, owner, or operator of accommodations offered by hosts on the Internet platform.  As Airbnb's Terms of Service state, Airbnb "does not own, create, sell, resell, provide, control, manage, offer, deliver, or supply any Listings or Host Services."

19.     Hosts, and not Airbnb, decide whether to list their properties and with whom and when to transact, describe their rentals, set their own lengths of stay, and determine their prices.  Airbnb's Terms of Service state that hosts "alone are responsible for their Listings and Host Services."  Hosts also input the minimum and/or maximum days of stay for a particular rental.  Airbnb does not control the content that hosts create and is not responsible for it.

20.     As a general matter, Airbnb does not review the hundreds of thousands of third-party listings before the listings appear on Airbnb's marketplace.  Rather, the process for listing properties is automated, and once the host provides listing information, the listing appears on the Airbnb marketplace almost immediately.

### Airbnb Is Committed to Responsible Home-Sharing

21.     Hosts who post listings on Airbnb are often everyday people using the powerful tools afforded by the Internet to engage in home-sharing to supplement their incomes.  In 2017, Palm Beach saw a total of 72,500 guest arrivals and $17.1 million in total host income

through Airbnb.  At present, there are approximately 3,700 listings for rentals in Palm Beach on Airbnb's marketplace.  An average Palm Beach host earns $7,900 per year from hosting on Airbnb, and many hosts say that the extra income earned from hosting has allowed them to stay in their homes.

22.     As part of the Airbnb Community Compact, the company is committed to helping promote responsible home-sharing to make cities stronger.  Airbnb has routinely cooperated with cities to increase host compliance with municipal laws, including through host-outreach efforts and by providing online tools for improved tax collection.  Airbnb has worked with other cities to develop regulations that are consistent with Section 230 or the Constitution.

23.     Airbnb also advises its hosts and guests to be aware of and comply with local laws in listing and renting units listed on Airbnb.  The Airbnb Terms of Service state that "Hosts alone are responsible for identifying, understanding, and complying with all laws, rules and regulations that apply to their Listings and Host Services."  Airbnb also maintains a "Responsible Hosting" section on the Airbnb website.  Airbnb provides a variety of general information for hosts about laws and regulations they should follow, including safety guidelines and property regulations.

**Airbnb Protects Private Information**

24.     Airbnb is one of a number of competitors that offer platforms for potential hosts to list properties for rent.  As a competitor in this marketplace, Airbnb considers that its confidential business information is extremely important for Airbnb's ability to maintain its business success, and it therefore takes various measures to guard its business information from unwanted disclosure.

25.     Airbnb also takes various steps to protect the privacy of its hosts and guests.  For example, although both hosts and guests complete profiles to participate on the site, personal information, including contact details and even last names, is not revealed until a booking has been completed.  These measures provide both security and privacy for hosts and guests, and indicate the importance of privacy to the users of the Airbnb platform.  This, in turn, encourages hosts and guests to have confidence in Airbnb's platform, which is crucial for Airbnb's business success.

**Palm Beach's Regulations Conscript Platforms into Impermissible Compelled Enforcement**

26.     Palm Beach County Ordinance No. 2018-024 regulating short-term rentals went into effect on October 18, 2018.  The County indicated by email that it will not move immediately to enforce the Ordinance against Airbnb.

27.     Generally, the purpose of the Ordinance is to require "Booking Agents" and "Hosting Platforms" ("collectively, "Platforms") like Airbnb to verify that each unit advertised on their sites is registered with the County and has a Business Tax Receipt ("BTR") and a Tourist Development Tax ("TDT") account and to impose penalties on Platforms and "Hosts" for violations of the Ordinance.  Ordinance Sec. 2, § 17-117(A).

28.     A "Short-Term Rental" is defined as a "unit that is rented as a Vacation Rental or as Home Sharing for a period of 180 days or less in a calendar year.  *Id.* § 17-117(B).

29.     "Vacation Rental" is a rental during which the host does not reside on the property.  *Id.*

30.    "Home Sharing" is a rental during which the host still resides on the property. *Id.*

31.    The Ordinance defines "Booking Service" as:

a.   "[A]ny reservation and/or payment system provided by a person or entity that facilitates a Short-Term Rental transaction between a Host and a prospective tourist or transient unit, and for which the person or entity collects or receives directly or indirectly through an agent or intermediary, a fee in connection with the reservation and/or payment services provided for the Short-Term Rental transaction." *Id.*

32.    It defines "Hosting Platform" as

a.   "[A] person that facilitates Home Sharing and Short-Term Rental business through advertising, match-making or any other means and from which the Hosting Platform derives revenues from providing or maintaining the marketplace.  Hosting Platforms usually, though not necessary, provide Booking Services through an online platform that allows a Host to advertise the Short-Term Rental through a website provided by the Hosting Platform and the Hosting Platform conducts a transaction by which Persons arrange Short-Term Rental use and payment, whether the Person pays rent directly to the Host or to the Hosting Platform."  *Id.*

33.     It defines "Host" as "[a] person that owns a Residential Unit, or has the legal right to rent a residence to other individuals or entities as a Short-Term Rental." *Id.*

34.     The Ordinance stipulates that Hosts must register their properties for Vacation Rental or Home Sharing by submitting the requisite application and fee. *Id.* § 17-117(D)(3).  In order for a property to be eligible, at the time of registration a Host must: (1) obtain a BTR; (2) ensure that Home Sharing takes place only in the residence approved by the County and occupied by the host; (3) ensure that Vacation Rental takes place only in the residence approved by the County; and (4) register each individual property separately. *Id.* § 17-117(D)(3)(a)-(d).

35.     Critically, the Ordinance significantly alters the duties of Platforms like Airbnb by imposing several new requirements on Booking Agents and Hosting Platforms.

36.     First, Section 17-117(C)(2) requires Platforms to "[a]ctively prevent, remove and cancel any illegal listings and bookings of a Short-Term Rental including where a listing has been advertised or rented without being registered with a TDT account and a current BTR." *Id.* § 17-117(C)(2).

37.     Second, Section 17-117(C)(3) requires Platforms to provide to the County Tax Collector a monthly report for each property advertised that includes: (1) the TDT account number; (2) the parcel identification number; (3) the address; (4) the name of the host; and (5) the total number of nights rented and amount paid for each stay. *Id.* § 17-117(C)(3).

38.     Third, Section 17-117(C)(5) provides that Platforms may provide and collect fees for booking services "only when the Short-Term Rental is lawfully registered for a TDT account and a BTR at the time the rental is advertised or rented." *Id.* § 17-117(C)(5).

39.     Fourth, Section 17-117(C)(6) requires Platforms, prior to accepting a listing, to require a host to provide valid TDT account and BTR numbers and include them on each piece of advertisement for the listing.  *Id.* § 17-117(C)(6).

40.     The Ordinance imposes significant penalties on Platforms for non-compliance.  "Any violation of a Hosting Platform's or Booking Service's obligation under this section shall subject the Hosting Platform or Booking Service to the administrative and enforcement penalties of this ordinance, including but not limited to payment of civil penalties of up to $500 per day, per unit, for the period of failure to comply."  *Id.* § 17-117(C)(7).  Moreover, the Ordinance's general penalty provision states, "Any violation of any portion of this Ordinance shall be punishable as provided by law."  *Id.* Sec. 4.

**Compliance with the Ordinance Would Impose Substantial Burdens on
Airbnb and Harm the Public**

41.     Airbnb's platform allows a rental transaction to be completed on the same website once the host and guest agree to it.  But the Ordinance's provisions regulating Platforms would require Airbnb to (i) continually monitor and to remove and (ii) prevent from publication third-party advertisements.  The Ordinance also would require Airbnb to change the operation and design of its website.  These requirements would force fundamental modifications to Airbnb's intermediary service, introduce delays in the booking process, erode customer goodwill, and require Airbnb to expend significant financial and technical resources.

42.     First, the requirement that Airbnb "actively prevent, remove and cancel any illegal listings and bookings of a Short-Term Rental including where a listing has been advertised or rented without being registered with a TDT account and a current BTR" would

force Airbnb to monitor, and withdraw or prevent from publication, third-party advertisements. *Id.* § 17-117(C)(2).

43.     Specifically, to comply with this provision, Airbnb would have to verify whether each advertisement contains *valid* registration numbers.  Airbnb could not comply simply by looking at a third-party listing.  Rather, Airbnb would have to review each listing to, at the very least, (1) check whether it includes TDT account and BTR numbers; (2) if it does, ascertain, by some form or another, whether those numbers are valid; and (3) if it does not, ascertain, by some form or another, whether the property nonetheless is validly registered.

44.     The Ordinance provides *no* means by which Airbnb can verify the validity of those numbers or the registration of the property.  Moreover, because the provision is phrased to require Airbnb to remove "illegal listings and bookings . . . *including where*" they do not list a valid TDT account and BTR, it also could be read to impose a broad, open-ended requirement to remove undefined "illegal" advertisements.  These onerous review requirements cannot be completed via automation.

45.     The burden on Airbnb of monitoring third-party content to prohibit and remove postings would not be measured solely by the static number of listings at a single point in time, but would be an ongoing and expanding burden.  There are at present approximately 3,700 Airbnb listings in Palm Beach.  In the normal course of business, hosts can add new listings, change the status of listings, and deactivate listings every day.  Airbnb then, too, would have to monitor for every change constantly.  The Ordinance's express content-removal requirement thus would cause a significant disruption to Airbnb's operations and impose substantial personnel and other costs on Airbnb (particularly because other cities have attempted

to enact, and may continue to attempt, similar regulatory requirements).  It also would injure the significant business goodwill that Airbnb has generated from the hosts and guests who have come to rely on its platform.

46.     Second, the ban on Airbnb's providing or collecting fees for booking services in connection with short-term rentals that are not lawfully registered for a TDT account and BTR, *id.* § 17-117(C)(5), and the requirement that Airbnb, *prior to accepting* a listing, require a host to provide valid TDT account and BTR numbers and list them on every advertisement, *id.* § 17-117(C)(6), would necessarily compel Airbnb to monitor and remove third-party listings.

47.     For the same reasons described above, Airbnb could not achieve compliance with simple automation.  Instead, under both Section 17-117(C)(5) and Section 17-117(C)(6), Airbnb would have to monitor and review third-party content, or else be held liable for a third party's decision to publish unlawful content.  But again, the Ordinance provides *no* means by which Airbnb can verify the validity of an advertisement's registration numbers.

48.     The third-party advertisements for properties on Airbnb's website are not unlawful on their face because they do not indicate whether a property complies with the Ordinance.  The Ordinance's requirement that Airbnb require, prior to accepting a listing, a host to provide valid TDT account and BTR numbers and include them on every piece of advertising does not alleviate this violation.  Indeed, it poses precisely the same problem.  If the listing did not include registration numbers, the underlying rental may still be lawful, as the property may be registered at the time of listing.  And if the listing did include a registration number, Airbnb still would have to verify the registration number is valid.  As a result, Airbnb cannot know

merely by looking at listings whether they propose transactions that violate the Ordinance. Given the prospect of significant penalties, if Airbnb has any doubt about the lawfulness of a particular listing, it likely will have to remove the listing, even if the Operator has complied with the Ordinance.  That, in turn, might create legal exposure for Airbnb for which the Ordinance does not indemnify the company.

49.     These provisions also would force Airbnb fundamentally to redesign the structure and operation of its website.  Airbnb provides booking, calendaring, and payment processing services in connection with advertisements on its website.  Airbnb's key innovative design feature is that it enables booking transactions between hosts and guests on the same website—with one click.  Airbnb provided a technological step forward from a "'bulletin board' service, or an online site 'on which Internet subscribers post comments and respond to comments posted by others.'"  *La Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1104 (C.D. Cal. 2017) (quoting *Kimzey v. Yelp! Inc.*, 836 F.3d at 1263, 1266 (9th Cir. 2016)).  The Ordinance's restrictions would force Airbnb to eliminate this key design feature.  Common sense explains why:  Airbnb could not risk allowing an automatic listing or booking before reviewing the content of the listing to ensure that it complies with the Ordinance.  Accordingly, Airbnb would have to undertake a fundamental redesign of its platform.

50.     Such a change would harm users.  Hosts and guests greatly value using Airbnb's services to facilitate payment and calendaring of rentals for listings published on Airbnb's site.  In the modern world of e-commerce, users expect to immediately enter into transactions online for goods and services advertised on home-sharing platforms like Airbnb. They do not expect to view listings they cannot book.  Were Airbnb no longer able to offer its

booking services, many hosts and guests likely would be confused and angered by the change (of not being able to book a listing on the site) and may stop using Airbnb's platform altogether.

51.     Third, the Ordinance's requirement that Airbnb disclose non-public user information for each listing to the County without any legal process or precompliance review will harm customer goodwill because Airbnb users value the privacy of their confidential information.  That information includes the TDT account number, parcel identification number, address, host name, and total number of nights rented and amount paid for each stay.  If Airbnb were forced to disclose the type of confidential information required by the Ordinance, this could strongly discourage both hosts and guests from using the platform.

52.     Enforcement of the Ordinance will cause Airbnb harm because Airbnb faces the threat of substantial penalties under a preempted law that violates its constitutional rights and will substantially disrupt its business and erode customer goodwill.

## CLAIMS FOR RELIEF

### COUNT 1:  VIOLATION OF THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS

53.     Airbnb incorporates all previous paragraphs as if fully set forth herein.

54.     Airbnb is a provider of an interactive computer service within the meaning of the Communications Decency Act, 47 U.S.C. § 230, because it operates the interactive online platform Airbnb.com.  Airbnb provides information to multiple users by giving them computer access to a computer server within the meaning of 47 U.S.C. § 230(f)(2).

55.     The third-party hosts that create listings on Airbnb.com are persons responsible for the creation or development of information provided through Airbnb, within the meaning of 47 U.S.C. § 230(f)(3).

56.     The Ordinance violates and conflicts with 47 U.S.C. § 230, and Airbnb's rights thereunder, because it imposes duties and obligations on Airbnb that treat Airbnb as the publisher or speaker of information provided by another information content provider and derive from Airbnb's status as a publisher or speaker of third-party content, all in a manner prohibited by Section 230.

57.     First, Section 17-117(C)(2) requires Airbnb to "[a]ctively prevent, remove, and cancel  any illegal listings and bookings of a Short-Term Rental including where a listing has been advertised or rented without being lawfully registered with a TDT account and a current BTR."  Ordinance § 17-117(C)(2).

58.     Section 230 of the CDA unambiguously bars efforts "'to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'"  *Dowbenko v. Google Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014) (quoting *Zeran*, 129 F.3d at 330).  Section 17-117(C)(2) would require Airbnb to make decisions to remove content and to decline to publish content.  This provision treats Airbnb as a publisher of third-party rental listings on its website and therefore violates and conflicts with the CDA.

59.     Second, Sections 17-117(C)(5) and (6) necessarily require Airbnb to monitor and remove content associated with third-party rental advertisements.  Treating Airbnb as a publisher or speaker of third-party content violates and conflicts with the CDA.

60.     These provisions also necessarily require Airbnb to alter the design and operation of its website.  Section 230 also protects an Internet intermediary's decisions regarding "features that are part and parcel of the overall design and operation of the website" as to third-party postings.  *Jane Doe No.1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016); *see also Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 422 (1st Cir. 2007) (Section 230 protects a provider's "decisions regarding the construct and operation of its websites."); *Fields v. Twitter, Inc*., 217 F. Supp. 3d 1116, 1123 (N.D. Cal. 2016) ("Twitter's decisions to structure and operate itself as a platform . . . allow[ing] for the freedom of expression [of] hundreds of millions of people around the world and, through its hands-off policy, allowing ISIS to obtain dozens of accounts on its social network, reflect choices about what [third-party] content can appear on [Twitter] and in what form. . . .  Where such choices form the basis of a plaintiff's claim, section 230(c)(1) applies." (internal quotation marks and citations omitted)), *aff'd*, 881 F.3d 739 (9th Cir. 2018).  Section 17-117(C)(5) for example, compel Airbnb to review listings prior to the time "the Short Term rental is advertised or rented."   So, too, under Sections 17-117(C)(6).  But facilitating publication and transactions between hosts and guests automatically and immediately is a key design feature of Airbnb's platform.  This direct regulation of the design and operation of Airbnb's website violates and conflicts with the CDA.

61.     The Ordinance also is preempted because it would "'stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in passing § 230 of the CDA."  *Doe v. America Online, Inc.*, 783 So.2d 1010, 1016 (Fla. 2001) (internal quotation marks omitted); *see generally Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1263 (11th Cir. 2012) (Conflict preemption arises "when the state

law stands as an obstacle to the objective of the federal law.  The court utilizes its judgment to determine what constitutes an unconstitutional obstacle to federal law, and this judgment is informed by examining the federal statute as a whole and identifying its purpose and intended effects.") (internal quotation marks and citations omitted).  Allowing the County to impose such liability would contravene Congress's goals in enacting Section 230: "to encourage the unfettered and unregulated development of free speech on the Internet, and to promote the development of e-commerce," *Medytox Sols., Inc. v. Investorshub.com, Inc.*, 152 So.3d 727, 730 (Fla. 4th DCA 2014), and "to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum," *Giordano v. Romeo*, 76 So.3d 1100, 1102 (Fla. 3d DCA 2011).  *See generally Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003) (holding that one of Congress's principal purposes in enacting Section 230 was to "encourage the unfettered and unregulated development of free speech on the Internet, and to promote the development of e-commerce").

62.     The Ordinance is a "State or local law that is inconsistent with" Section 230, in violation of 47 U.S.C. § 230(e)(3).

63.     Enforcement of the Ordinance against Airbnb violates and is preempted by 47 U.S.C. § 230.

64.     The Ordinance interferes with or impedes the accomplishment of the full purposes and objectives of federal law, violates the Supremacy Clause, U.S. Const. art. VI, cl. 2, and is invalid and preempted.

65.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the County to prevent its enforcement of the Ordinance, which would conflict with and violate the CDA.

**COUNT 2:  VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION AND ARTICLE I, SECTION 4 OF THE FLORIDA CONSTITUTION AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**
**(Content-Based Restrictions on Speech)**

66.     Airbnb incorporates all previous paragraphs as if fully set forth herein.

67.     The Ordinance violates the First Amendment and Article I, Section 4 of the Florida constitution because it imposes content-based restrictions on commercial speech by requiring online platforms like Airbnb to monitor, remove, and prohibit the publication of advertisements that are not illegal on their face to avoid severe penalties.

68.     The Ordinance requires Airbnb to remove or prevent the publication of third-party content on its website.  Ordinance § 17-117(C)(2).  The Ordinance also imposes significant monetary penalties on Airbnb if it "provide[s]" or "collect[s] a fee" in connection with any short-term rental that is not "lawfully registered for a TDT and a BTR account with the Tax Collector at the time the Short-Term Rental is advertised or rented."  *Id.* 17-117(C)(6).

69.     A law is "presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech." *Simon & Schuster, Inc. v. Members of New York State Crime Victims Board*, 502 U.S. 105, 115 (1951). Whether that financial burden taxes speech itself or speech-derived income, "[b]oth forms of financial burden operate as disincentives to speak." *Id.* at 117.  For that reason, "[l]awmakers

may no more silence unwanted speech by burdening its utterance than by censoring its content." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011). "The government need not ban a protected activity . . . if it can simply proceed upstream and dam the source." *Buerle v. City of Key West*, 813 F.3d 973, 977 (11th Cir. 2015). Article I, Section 4 of the Florida constitution provides at least the same level of protection as does the federal Constitution, because "the federal constitution represents the 'floor for basic freedoms, and the state constitution represents the 'ceiling.'" *Warner v. City of Boca Raton*, 887 So.2d 1023, 1030 (Fla. 2004) (quoting *Traylor v. State*, 596 So.2d 957, 962 (Fla. 1992)); *see generally* 10A Fla. Jur. 2d Constitutional Law § 284 ("The Florida courts have tended to merge the discussion of the limitations upon freedom of speech and of the press contained in the Florida Constitution and the First Amendment of the Federal Constitution to the point that cases from Florida courts and from the federal courts are cited interchangeably." (citing *State v. Globe Communications Corp.*, 622 So. 2d 1066 (Fla. 4th DCA 1993), *aff'd*, 648 So. 2d 110 (Fla. 1994)). The Ordinance compels Airbnb to agree to remove and prevent publication of third-party listings based on their content. It also places a financial penalty on speech-derived income by requiring Airbnb to police speech on its platform before accepting fees for booking transactions. It therefore targets protected commercial speech and disproportionately burdens Platforms like Airbnb.

70.     The Ordinance constitutes a content-based restriction on speech because it applies solely based on the content of published rental listings on Airbnb's platform.

71.     The Ordinance's burden on speech is not narrowly or appropriately tailored to promote a compelling or substantial interest on the part of the County, and is not likely to achieve any such interest in a direct and material way. For example, the County can directly

enforce its short-term rental registration requirements against hosts.  The County has not shown, and cannot show, that less-speech-restrictive alternatives like this would not be an adequate means of achieving the County's policy goals.

72.     Enforcement of this provision against Airbnb therefore violates the First Amendment of the U.S. Constitution, as applied to the County by the Fourteenth Amendment, and Article I, Section 4 of the Florida constitution.

73.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the County, whose enforcement of the Ordinance would conflict with and violate the First Amendment of the U.S. Constitution and Article I, Section 4 of the Florida constitution.

**COUNT 3:  VIOLATION OF THE STORED COMMUNICATIONS ACT, 18 U.S.C. §§ 2701 *ET SEQ*. AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 18 U.S.C. § 2707, 42 U.S.C. § 1983, AND THE COURT'S EQUITABLE POWERS**

74.     Airbnb incorporates all previous paragraphs as if fully set forth herein.

75.     Under the SCA, "a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity," without a subpoena or other legal process, absent one of the other applicable exceptions, none of which apply here.  18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c).

76.     Airbnb is a provider of an "electronic communication service" within the meaning of the SCA, as it provides to its users "the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).  Airbnb also is a provider of a remote computing

service within the meaning of the SCA, as it provides to users "computer storage or processing services by means of an electronic communications system."  18 U.S.C. § 2711(2).

77.     The County is a "governmental entity" under the SCA.  *See* 18 U.S.C. § 2711(4) (defining "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof").

78.     The Ordinance requires Platforms to "[p]rovide to the Tax Collector, by the fifth day of each month, a report in an electronic format of the following information for each property advertised on its Platform for the previous month: (a) TDT account number; (b) Parcel Identification Number; (c) Address of Short-Term Vacation Rental; (d) Name of Host; and (e) Total number of nights rented and amount paid for each stay."  Ordinance § 17-117(C)(3).

79.     Enforcement of this provision violates and conflicts with the SCA, and Airbnb's rights thereunder, because it requires Airbnb to "divulge a record or other information pertaining to a subscriber to or customer of such service" to a "governmental entity," without a subpoena or other form of legal process.  18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c).

80.     This provision also interferes with or impedes the accomplishment of the full purposes and objectives of federal law, violates the Supremacy Clause, U.S. Const. art. VI, cl. 2, and is invalid and preempted.

81.     Pursuant to 18 U.S.C. § 2707(a)-(b), 42 U.S.C. § 1983, and this Court's equitable powers, Airbnb seeks injunctive relief against the County to prevent its enforcement of the Ordinance, which would conflict with and violate the SCA.

**COUNT 4:  VIOLATION OF THE FLORIDA SECURITY OF COMMUNICATIONS ACT, FLA. STAT. ANN. § 943.23(4)(a) AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**

82.    Airbnb incorporates all previous paragraphs as if fully set forth herein.

83.    The above provision also violates the Florida Security of Communications Act, Flat. Stat. Ann. § 934.23(4)(A), which "mimics subsections 2703(c) and (d) of the Stored Communications Act" by requiring an officer to obtain a warrant or court order from a provider of remote computing service or electronic communication service.  *Mitchell v. State*, 25 So.3d 632, 534 (Fla. 4th DCA 2009).

84.    Pursuant to Flat. Stat. Ann. § 934.23(4)(A), 42 U.S.C. § 1983, and this Court's equitable powers, Airbnb seeks injunctive relief against the County to prevent its enforcement of the Ordinance, which would conflict with and violate Chapter 934 of Florida Law.

**COUNT 5: VIOLATION OF THE FOURTH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 12 OF THE FLORIDA CONSTITUTION AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS (Unreasonable Search and Seizure)**

85.    Airbnb incorporates all previous paragraphs as if fully set forth herein.

86.    The Ordinance violates the Fourth Amendment of the Constitution, as applied to the County by the Fourteenth Amendment, and Article I, Section 12 of the Florida constitution, because it constitutes an unreasonable search and/or seizure by compelling Airbnb to disclose to the County sensitive, private business records and/or other information in which Airbnb has a reasonable expectation of privacy, without prior judicial authorization or precompliance review.

87.     The Ordinance requires Platforms to "[p]rovide to the Tax Collector, by the fifth day of each month, a report in an electronic format of the following information for each property advertised on its Platform for the previous month: (a) TDT account number; (b) Parcel Identification Number; (c) Address of Short-Term Vacation Rental; (d) Name of Host; and (e) Total number of nights rented and amount paid for each stay."  Ordinance § 17-117(C)(3).

88.     The Fourth Amendment requires that a business such as a hotel maintaining a guest registry subject to a government search of its records be afforded some type of administrative process—at the very least, "an opportunity to obtain precompliance review before a neutral decisionmaker."  *See City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015). The Florida constitution provides the same level of protection as the federal Constitution, as it "shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court."  Fl. Const. art. I, § 12.

89.     Enforcement of this provision against Airbnb therefore violates the Fourth Amendment of the U.S. Constitution, as applied to the County by the Fourteenth Amendment, and Article I, Section 12 of the Florida constitution.

90.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the County, whose enforcement of the Ordinance would conflict with and violate the Fourth Amendment of the U.S. Constitution and Article I, Section 12 of the Florida constitution.

**COUNT 6: VIOLATION OF ARTICLE I, SECTION 23 OF THE FLORIDA CONSTITUTION AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**

91.     Airbnb incorporates all previous paragraphs as if fully set forth herein.

92.     The Ordinance violates Article I, Section 23 of the Florida constitution by compelling Airbnb to disclose to the County private user information in which Airbnb's users have a reasonable expectation of privacy.

93.     Article I, Section 23 provides, in relevant part, that "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."  Fla. Const. art. I, § 23.  The Florida Supreme Court has made clear that "the right to privacy in the Florida Constitution is broader, more fundamental, and more highly guarded than any federal counterpart." *Weaver v. Myers*, 229 So.3d 1118, 1125 (Fla. 2017) (citing *Winfield v. Div. of Pari–Mutuel Wagering*, 477 So.2d 544, 548 (Fla. 1985)). "The right of privacy 'ensures that individuals are able to determine for themselves when, how and to what extent information about them is communicated to others.'" *Id.* at 1126 (quoting *Shaktman v. State*, 553 So.2d 148, 150 (Fla. 1989)).

94.     Airbnb has a close relation to its users. Those users do not have the ability to protect their own interests because they will not know if and when Airbnb is forced to disclose their private information, nor is the Ordinance's disclosure provision enforceable against them. Under clear Florida precedent, moreover, Airbnb's users have a reasonable expectation of privacy in the information they provide to Airbnb when engaging in transactions on its website. Just as hotel guests have a reasonable expectation of privacy in the information they provide when making reservations, *Josifov v. Kamal-Hashmat*, 217 So.3d 1085, 1087 (Fla. 4th DCA 2017), and just as customers have a reasonable expectation of privacy in their investment and banking records, including their identity, addresses, and the nature of their transactions, *Berkeley v. Eisen*, 699 So.2d 789, 790 (Fla. 4th DCA 1997), Airbnb's users have a reasonable expectation

of privacy in the information the Ordinance compels Airbnb to disclose.  Airbnb's users "have not waived their privacy rights, nor have they done anything inconsistent with their reasonable expectation of privacy in the information they gave to [Airbnb]."  *Josifov*, 217 So.2d at 1087-88.

95.     The County has not shown, and cannot show, that it has a compelling interest in obtaining the private information the Ordinance requires Airbnb to disclose.  Nor can the County show that the Ordinance serves a compelling interest through the least intrusive means.

96.      Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the County, whose enforcement of the Ordinance would conflict with and violate Article I, Section 23 of the Florida constitution.

## COUNT 7:  DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201

97.     Airbnb incorporates all previous paragraphs as if fully set forth herein.

98.     The Declaratory Judgment Act provides that "any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," as long as there is an actual controversy. 28 U.S.C. § 2201(a).  This action presents an actual and present controversy between Airbnb and the County concerning the validity of the Ordinance and its enforceability against Airbnb and other online Hosting Platforms and Booking Agents.  As set forth above, Airbnb's rights and liabilities are immediate and real, and are certain to arise.

99.     Based on the foregoing allegations, Airbnb is entitled to a declaration, under 28 U.S.C. § 2201, that the Ordinance cannot be enforced against Airbnb because such

enforcement would violate the CDA, 47 U.S.C. § 230; the Supremacy Clause, U.S. Const. art. VI, cl. 2; the SCA, 18 U.S.C. §§ 2701 *et seq.*; the First, Fourth, and Fourteenth Amendments of the United States Constitution; Fla. Stat. Ann. § 934.23(4)(a); and Sections 4, 12, and 23 of Article 1 of the Florida constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Airbnb respectfully requests that the Court:

100.    Declare that, as applied to Airbnb and on its face, the Ordinance violates 47 U.S.C. § 230 and the Supremacy Clause because it would permit the imposition of civil penalties on Airbnb for its publication-related activities and impose duties on Airbnb with respect to its protected editorial acts and decisions concerning third-party rental listings on its website.

101.    Declare that, as applied to Airbnb and on its face, the Ordinance violates the First and Fourteenth Amendments of the U.S. Constitution and Article I, Section 4 of the Florida constitution because it would place content-based restrictions on protected commercial speech by imposing severe penalties on Airbnb, and the restrictions the Ordinance would impose are not sufficiently narrowly tailored to promote a compelling or substantial interest on the part of the County.

102.    Declare that, as applied to Airbnb and on its face, the Ordinance violates 18 U.S.C. §§ 2701 *et seq.* and the Supremacy Clause, and Fla. Stat. Ann. § 934.23(4)(a), because it would compel Airbnb, an electronic communication service provider and remote computing service provider, to divulge information pertaining to a subscriber or to a customer of such

service to the County, a governmental entity, without a subpoena or any other form of legal process.

103.    Declare that, as applied to Airbnb and on its face, the Ordinance violates the Fourth Amendment of the U.S. Constitution and Article I, Section 12 of the Florida constitution because the Ordinance compels Airbnb to disclose to the County sensitive, private business records in which Airbnb has a reasonable expectation of privacy, without prior judicial authorization or pre-compliance.

104.    Declare that, as applied to Airbnb and on its face, the Ordinance violates Article 1, Section 23 of the Florida constitution because the Ordinance compels Airbnb to disclose to the County private, confidential user information in which Airbnb's users have a reasonable expectation of privacy.

105.    Permanently enjoin the County; its officers, agents, servants, employees, and attorneys; and those persons in concert or participation with them from taking any actions to enforce Sections 17-117(C)(2), (3), (5), and (6) of the Ordinance, as well as the other portions of the Code of Ordinances for Palm Beach County providing for enforcement and penalties that would penalize Airbnb—including any investigation, arrest, prosecution, or penalty—for: (a) the completion of booking transactions for rental advertisements published by third-party hosts or the publication of other information provided by third-party hosts on Airbnb's platform; (b) the failure to remove or prohibit from publication any short-term rental listing that does not comply with the Ordinance; (c) the failure to disclose to the County each listing located in the County as well as the names of the persons responsible for the listing, the address of the listings, the content of the listing—including the listing's TDT account or BTR numbers and parcel identification

number—and length of stay and price information associated with the listings; or (d) the failure to monitor and/or verify whether any short-term rental listing complies with the Ordinance.

106.    Award Airbnb its reasonable costs and attorneys' fees under 42 U.S.C. § 1988; and

107.    Award Airbnb such other and further relief as the Court deems just and proper.

Dated:  November 30, 2018.

Respectfully submitted,

/s/ David M. Buckner
DAVID M. BUCKNER (Fla. Bar No. 60550)
david@bucknermiles.com
BUCKNER + MILES
3350 Mary Street
Miami, FL 33133
Tel: (305) 964-8003
Fax: (786) 523-0485

CHAD GOLDER (*Pro hac vice* pending)
chad.golder@mto.com
ADELE M. EL-KHOURI (*Pro hac vice* pending)
adele.el-khouri@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street NW, 7th Floor
Washington, DC 20004-1361
Tel: (202) 220-1100
Fax: (202) 220-2300

JONATHAN H. BLAVIN (*Pro hac vice* pending)
jonathan.blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-4000
Tel: (415) 512-4000
Fax: (415) 512-4077

*Attorneys for Plaintiff Airbnb, Inc.*